UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUL 17 2006
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. 4:06CV01064CEJ |
| v. | ) |
| BETONSPORTS PLC, | ) |
| Defendant. | ) |

**COMPLAINT FOR A TEMPORARY RESTRAINING ORDER,
A PRELIMINARY AND PERMANENT INJUNCTION, AND
OTHER EQUITABLE RELIEF**

Plaintiff United States of America, for its Complaint against the defendant, alleges:

1.  This action is brought by the United States for a temporary restraining order, preliminary and permanent injunctive and other equitable relief pursuant to 18 U.S.C. §1345, and Federal Rule of Civil Procedure 65(b), to enjoin the commission of a mail and wire fraud scheme, and further to enjoin the alienation and disposition of property derived from the commission of the fraud, or substitute property of equivalent value. The purpose of this action is to prevent a continuing and substantial injury to the United States and residents of the United States.

**JURISDICTION AND VENUE**

2.  Plaintiff is the United States of America.

3.  Defendant BETONSPORTS PLC is a publicly traded holding company incorporated in the United Kingdom. BETONSPORTS PLC does business in the United States and in the Eastern District of Missouri by conducting illegal gambling businesses that offer

wagering on sports and sporting events through Internet web sites and toll-free telephone services. BETONSPORTS PLC is made up of subsidiaries including BOS (Antigua) Ltd.; BOS (Costa Rica) S.A.; Infinity Sports International Corporation; Gibraltar Sports Corporation; Mill (Antigua) Ltd.; Millennium Sports Corporation; Sports on the Internet Ltd.; Wagermall.com Inc.; and Lansford Industries, Inc. BETONSPORTS PLC operates a number of Internet businesses, including BETonSPORTS.COM; BoSGAMING.NET; BoSPOKER.COM; BoSCASINO.COM; Wagermall.com; Wagermall Poker.com; MVP Sportsbook & Casino; Gibraltar Sports; ROCKISLANDSPORTS; ROCKISLANDCASINO; Millennium Sports; Millpoker.com; Jagbet.com; Jagcasino.com; BETTORSTRUST.COM;. BETTORSTRUST-CASINO.COM; Infinity Sports International; Infinity Pokerclub.com; and betabet. A complete listing of the Internet domain names BETONSPORTS PLC uses to direct Internet users to its web sites is attached as Exhibit A to Detective Mize's Affidavit, and herein incorporated by reference. For the purposes of this Complaint, BETONSPORTS PLC includes the company's predecessors in interest.

4.     Prior to a July 2004 public offering of stock through the Alternative Investment Market in London, the Internet sportsbooks were jointly operated by the same individuals as BETonSPORTS.COM, Infinity, Millennium, Jaguar, and others. These Internet sportsbooks operated illegally throughout the United States. Since the formation of BETONSPORTS PLC, the company has added at least five additional Internet sportsbooks to its business, at least three of which are "U.S. facing" operations.

5.     Personal jurisdiction is proper over the defendant because it is a legal person who

has defrauded and continues to defraud residents of the Eastern District of Missouri, in violation of 18 U.S.C. §§1341 and 1343.

6. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345.

7. Venue is proper pursuant to 28 U.S.C. §1391(c).

## THE FRAUD SCHEME

8. The United States' findings regarding the defendant are set forth in detail in the Affidavit of Detective Brian Mize, who is a member of the Regional Computer Crime Education and Enforcement Group, and assigned to the federal criminal investigation in this case. In summary, the United States has found that the defendant, among others, has devised and implemented a scheme to defraud residents of the United States by conducting illegal gambling businesses using Internet web sites and toll-free telephone services.

9. Under United States law, it is illegal to transmit a wager on a sporting event or contest over an interstate wire communication facility: 18 U.S.C. §1084 (the "Wire Wager Act") states:

> (a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility[1] for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both.

---

[1] The term "wire communication facility" means any and all instrumentalities, personnel, and services (among other things, the receipt, forwarding, or delivery of communications) used or useful in the transmission of writings, signs, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission. 18 U.S.C. §1081.

10. United States federal statutes also prohibit the operation of an illegal gambling business. 18 U.S.C. § 1955 states:

> (a) Whoever conducts, finances, manages supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
> (b) As used in this section –
> (1) 'illegal gambling business' means a gambling business which –
> (I) is a violation of the law of a State or political subdivision in which it is conducted;
> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
> (2) "gambling" includes but is not limited to . . . bookmaking . . . .

The State of Missouri outlaws gambling and the promotion of gambling outside of heavily regulated river boat casinos, §§572.020 and 572.030, Mo. Rev. Stat.

11. It is also a violation of federal law to use interstate wire communications, or the U.S. mail system, to perpetrate a fraud. 18 U.S.C. § 1341 states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . , for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

11. Since approximately 1995, BETONSPORTS PLC and its predecessors in interest

have devised and created advertising designed to convince gamblers to place bets with toll-free telephone service and computer web site sportsbooks now controlled by BETONSPORTS PLC. Much of this advertising stated that these gambling web sites, particularly BETonSPORTS.COM, were "legal and licensed." These ads were distributed by mail, television, radio and on the Internet.

12. Examples of the printed advertising distributed by BETONSPORTS PLC and its predecessors include a 2002 "BETonSPORTS.COM Superbowl Special." This publication stated that BETonSPORTS.COM was the "World's Largest, Legal and Licensed Sportsbook." A typical mailing of this type could include up to 2,000,000 pieces. One BETonSPORTS.COM flyer mailed out between July 7 and July 11 of 2003 contained the following statement:

> **Legal Status** - Is your current book legal? Do they hold a license anywhere? Does the country your Book is located in even issue licenses? BetonSports.com is the only sportsbook & casino in the world licensed on three continents by the governments of the United Kingdom, Costa Rica and Ireland, ensuring our customers of the legitimacy of our operations.

Similarly, another BETonSPORTS.COM flyer stated:

> **Legal Situation** - Is your book legally licensed to operate? BetonSports.com Sportsbook and Casino holds gaming licenses in Antigua, Costa Rica, United Kingdom and Ireland. We are licensed and legal in all jurisdictions we have operations.

Examples of mailings from BETonSPORTS .COM to the Eastern District of Missouri are attached as Exhibit C.

13. In July of 2004, defendant BETONSPORTS PLC caused the mailing of 135,000 flyers in the United States, advertising Infinity Sports International (www.betoninternet.com), owned and controlled by the defendant BETONSPORTS PLC as offering "Legal and Licensed

5

Sports Wagering."

14. According to BETONSPORTS PLC's last Annual Report (covering the 53 weeks up to February 6, 2005), the company's sportsbooks took 2.9 million bets by phone, and 7 million bets over the Internet. The average phone bet was $201, and the average Internet bet was $72 (average sports bet, $109). American football represented 39%, basketball 36% and baseball 22% (97% total) of all the bets placed.

16. As of the date of this Complaint, owners and operators of BETONSPORTS PLC sought to induce bettors in the United States to place illegal wagers on sports and sporting events with BETONSPORTS PLC-controlled Internet web sites, and transmitted wagering information in interstate and foreign commerce, in violation of federal law.

17. The United States has probable cause to believe that violations of 18 U.S.C. §§ 1341 and 1343 are ongoing, and likely to occur in the future absent injunctive relief from the Court.

### COUNT 1

18. The United States re-alleges paragraphs 1 through 17 of this Complaint, and incorporates them herein by reference.

19. Based upon the investigation conducted in this matter, as outlined in the Affidavit of Detective Brian Mize and this Complaint, the United States has probable cause to believe that the defendant has committed and will continue to commit offenses under 18 U.S.C. §§ 1341 & 1343. The public continues to suffer immediate and irreparable injury, loss, and damage through the defendant's continuing scheme to defraud. The United States brings this action to restrain the defendant from continuing to perpetrate its fraudulent scheme on the public.

20. Upon a showing of probable cause that the defendant is committing a mail or wire fraud offense, the United States is entitled, pursuant to 18 U.S.C. § 1345, to a temporary restraining order, a preliminary injunction, a permanent injunction, and any other action which this Court deems just. This relief may include an order freezing, and ultimately seizing, the instrumentalities the defendant uses to perpetrate its fraud on the residents of the United States.

20. Pursuant to Federal Rule of Civil Procedure 65(b), an applicant may be granted a temporary restraining order without written or oral notice to the adverse party or that party's attorney if it clearly appears from specific facts shown by a verified complaint that immediate and irreparable injury will result before the adverse party can be heard in opposition.

## PRAYER FOR RELIEF

21. WHEREFORE, Plaintiff United States requests, pursuant to 18 U.S.C. §1345, and this Court's inherent equitable powers, that this Court:

A. Issue a temporary restraining order, and, after hearing, a preliminary and permanent injunction barring the defendant, its agents, contractors and other entities having possession or control of the instrumentalities used by the defendant, their officers, employees, and all persons participating in or assisting in the defendants' operation:

(1) from continuing to perpetrate the defendant's fraudulent scheme of operating an illegal gambling business through Internet web sites and telephone services in violation of 18 U.S.C. §§ 1341 & 1343;

(2) from continuing to operate or control or cause the operation of any web site that purports to offer sports betting, or transmit betting information in the United States;

(3) from continuing to operate or control or cause the operation of any

telephone service that purports to offer sports betting, or transmit betting information in the United States;

   (4) from soliciting and accepting wagers on sports and sporting events from persons in the jurisdiction of the United States;

   (5) from causing the transmission of wagering information using interstate and international wire communications facilities within the United States;

   (6) from causing the transmission of funds solicited from persons in the United States for the purpose of placing wagers on sports and sporting events to the defendant and its agents outside the United States;

   (7) from advertising, by any method, or in any media, or causing the advertising of any gambling activity which is in violation of United States law, specifically 18 U.S.C. § 1084 (the "Wire Wager Act");

   (8) from transporting gambling paraphernalia, or causing the transportation of gambling paraphernalia in the United States, in violation of United States law, specifically 18 U.S.C. § 1952;

   (9) from transferring or causing the transfer of funds to the United States, within the United States, or from the United States in violation of United States law, specifically 18 U.S.C. §§ 1956 and 1957; and

   (10) from causing persons or items to move in interstate or foreign commerce within the United States in violation of United States law, specifically 18 U.S.C. §§ 1952 and 1953.

B. Issue a temporary restraining order and, after hearing, a preliminary injunction which includes the following requirements:

(1) the defendant is not to transfer, convert, encumber or sell any of the domain names listed on Exhibit A, attached to Detective Mize's Affidavit and herein incorporated by reference;

(2) the registrars and registries, specifically Directnic, Register.com, GoDaddy.com and Network Solutions are not transfer, cancel, or otherwise make changes to the domain name registrations for any of the domain names listed in Exhibit A without explicit instructions from the Court;

(3) the defendant must inform the providers of telephone services listed in Exhibit C, attached to Detective Mize's Affidavit and herein incorporated by reference, that it is ceasing illegal operations in the United States, and that it will no longer accept wagers, or allow the transmission of betting information through interstate and foreign communication facilities in the U.S., such being and having been in violation of federal law;

(4) the defendant must return to the sender all funds in its possession received from persons in the United States, for the purpose of opening a sports betting wagering account;

(5) the defendant must set up a toll free telephone service for each web site it operates, to provide refund information to each person in the United States who has a wagering account with each web site operated by the defendant in the United States;

(6) the defendant must post, on each web site it operates that is accessible from the United States, the following message on its primary access page:

> THIS WEB SITE DOES NOT ACCEPT WAGERS ON SPORTS OR SPORTING EVENTS FROM PERSONS IN THE UNITED STATES. IT IS A VIOLATION OF UNITED STATES LAW TO TRANSMIT SPORTS WAGERS OR BETTING INFORMATION TO THIS WEB SITE FROM THE UNITED STATES. IF YOU HAVE A WAGERING ACCOUNT WITH THE OPERATORS OF THIS WEB SITE, PLEASE CALL [TOLL FREE TELEPHONE NUMBER] TO ARRANGE A REFUND.

(7) the defendant must provide an automated message on each telephone wagering service it operates in the United States, stating the following:

> THIS TELEPHONE SERVICE DOES NOT ACCEPT WAGERS ON SPORTS OR SPORTING EVENTS FROM PERSONS IN THE UNITED STATES. IT IS A VIOLATION OF UNITED STATES LAW TO TRANSMIT SPORTS WAGERS OR BETTING INFORMATION ON THIS TELEPHONE LINE. IF YOU HAVE A WAGERING ACCOUNT WITH THE OPERATORS OF THIS TELEPHONE LINE, HANG UP AND CALL [TOLL FREE TELEPHONE NUMBER] TO ARRANGE A REFUND.

(8) the defendant must place the following statement as a full page advertisement in a newspaper of national U.S. circulation (*i.e., The Wall Street Journal* or *USA Today*];

> BETONSPORTS PLC, WHICH OWNS AND OPERATES THE LISTED INTERNET WEB SITES AND TELEPHONE BETTING SERVICES, IS NO LONGER ACCEPTING WAGERS FROM PERSONS IN THE UNITED STATES. IT IS A VIOLATION OF UNITED STATES LAW TO TRANSMIT SPORTS WAGERS OR BETTING INFORMATION USING INTERSTATE OR INTERNATIONAL TELEPHONE LINES. IF YOU HAVE A WAGERING ACCOUNT WITH A BETONSPORTS PLC SPORTSBOOK OR TELEPHONE WAGERING SERVICE, PLEASE CALL [TOLL FREE TELEPHONE NUMBER] TO ARRANGE A REFUND.

C. Order the defendant, its agents, employees, attorneys, and all persons acting in concert and in participation with it to provide to the United States the following materials within seven (7) calendar days:

(1) a list of all financial institutions, including but not limited to banks and brokerage houses, at which the defendant currently maintains or has maintained savings, checking or other accounts during the previous five (5) years;

(2) a list of all the names under which the defendant has operated in the United States, including the names of individual persons, entities and trademarks; and

(3) all business records relating to the scheme described in this Complaint and the attached Affidavit.

D. Sign the attached Order to the United States Patent and Trademark Office, requiring that Office to cancel the following trademarks, used by the defendant in its scheme to defraud: BETONSPORTS.COM; NASA SPORTS BOOK; WAGERMALL.COM; MILLENNIUM SPORTS; BETTORS TRUST; JAGUAR SPORTS INTERNATIONAL; ROCK ISLAND SPORTS; GIBRALTAR SPORTS; and INFINITY SPORTS INTERNATIONAL.

E. Sign the attached Order to the registrars who maintain and control access to the domain names registered to the defendant, directing them to prevent the defendant from making any changes to those web sites, except those specifically ordered by this Court;

F. Award such other additional relief as the Court determines to be just and proper. For the convenience of the Court, a draft order is attached.

G. As it is essential that the substance of this Complaint remain unknown to the defendant until the requested relief is in place, it is also requested that this Complaint and accompanying pleadings remain sealed until the further order of this Court.

Respectfully submitted this 17th day of July, 2006.

Respectfully submitted,

CATHERINE L. HANAWAY
United States Attorney

MICHAEL K. FAGAN, #6617
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2220

MARTY WOELFLE, by Michael K. Fagan, AUSA
Trial Attorney
U.S. Department of Justice
Organized Crime & Racketeering Section
1301 New York Ave., Room 705
Washington, D.C. 20005
(202) 353-2373