(3) On or about February 12, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called NASA, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with NASA. The instructions stated that the money was to be sent from the United States to "David Allen" in Belize.

(4) On or about March 8, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Gibraltar Sports, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Gibraltar Sports. The instructions stated that the money was to be sent from the United States to "Jerry Moore" in Ecuador.

(5) On or about March 8, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Millennium. The instructions stated that the money was to be sent from the United States to "Kevin Green" in Ecuador.

(6) On or about March 12, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sportsbook, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Millennium. The instructions stated that the money was to be sent from the United States to "Paul Rogers" in Ecuador.

(7) On or about March 13, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sports, and accepted an account inquiry via a telephone and Internet communication to an ENTERPRISE controlled Internet web site with the domain name of bet.wagermillennium.com.

(8) On or about April 25, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Gibraltar Sports, and accepted a sports wager via a telephone and Internet communication to an ENTERPRISE-controlled Internet web site with the domain name of bettherock.com.

(9) On or about April 25, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sports, and accepted a sports bet via a telephone and Internet communication to an ENTERPRISE-controlled Internet web site with the domain name of millsports.com.

(10) On or about June 12, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sports, and accepted a request via telephone to withdraw money from a wagering account held by the KAPLAN GAMBLING ENTERPRISE.

(11) Between September 1 and October 30, 2003, the KAPLAN GAMBLING ENTERPRISE mailed brochures, magazines, coupons and flyers mailed from an address in Miami, Florida, to 12430 Tesson Ferry Road, St. Louis, Missouri.

(12) Between August 2002 and September 2003, the KAPLAN GAMBLING ENTERPRISE caused fraudulent radio advertisements to be broadcast by radio stations across the country.

(13) Between October 2001 and January 2002, the KAPLAN GAMBLING ENTERPRISE arranged for the telecast of a fraudulent television advertisement stating that its gambling telephone services and web sites were "legal and licensed."

(14) Between 2001 and the date of this Indictment, the KAPLAN GAMBLING ENTERPRISE transported and caused the transportation of gambling paraphernalia across state boundaries, and used the equipment to induce individuals to open betting accounts with various ENTERPRISE-controlled Internet sports gambling web sites.

(15) On or about November 24, 2003, defendant David Carruthers traveled to New York City, and met with employees of a media relations firm used by the ENTERPRISE to promote its operations.

(16) On or about February 20, 2004, employees, owners or agents of the Lenis Group of companies and employees and agents of the ENTERPRISE arranged for the shipment, from Miami, Florida to Costa Rica, of two automobiles, purchased with funds provided by the KAPLAN GAMBLING ENTERPRISE, for use by the ENTERPRISE.

(17) On or about September 6, 2000, the KAPLAN GAMBLING ENTERPRISE caused a check in the amount of $99,620.00 to be made out by American Media Communications, payable to One-on-One Sports, for the purchase of advertising for ENTERPRISE-controlled Internet gambling web sites on radio broadcasts.

(18) On or about December 11, 2000, the KAPLAN GAMBLING ENTERPRISE caused a check in the amount of $100,000 to be sent to Standard Register Company, to purchase services related to direct mail advertising of ENTERPRISE-controlled Internet gambling web sites.

(19) On or about April 11, 2001, the KAPLAN GAMBLING ENTERPRISE caused a check in the amount of $109,903.39 to be sent to Standard Register Company, to purchase services related to direct mail advertising of ENTERPRISE-controlled Internet gambling web sites.

(20) On or about September 2, 2003, the KAPLAN GAMBLING ENTERPRISE caused $90,000.00 to be sent from a bank located outside the United States via a wire transfer, to a bank account controlled by defendant DME GLOBAL located in Florida, to purchase advertising/promotional services on behalf of ENTERPRISE-controlled Internet gambling web sites.

(21) On or about August 4, 2004, the KAPLAN GAMBLING ENTERPRISE caused $61,962.00 to be sent from a bank located outside the United States via a wire transfer, to a bank account controlled by defendant DME GLOBAL located in Florida, to purchase advertising/promotional services on behalf of ENTERPRISE-controlled Internet gambling web sites.

(22) On or about December 28, 2005, BETONSPORTS PLC purchased three online sports books; MVPSportsbook, Player Super Book and V-Wager.

(23) On or about April 12, 2006, BETONSPORTS PLC owned web site BETonSPORTS.COM solicited and accepted wagers from an individual residing in the State of Washington, in violation of that State's laws.

All in violation of Title 18, United States Code, § 1962(d).

## COUNT 2
(Scheme to Defraud - Mail)

37. The Grand Jury re-alleges paragraphs 25, 27 and 28 above, and further charges that on or about September 1 to October 30, 2003, in the Eastern District of Missouri and elsewhere, defendants BETONSPORTS PLC and DME GLOBAL MARKETING AND FULFILLMENT, INC, for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause to be delivered by mail, from Miami, Florida, to 12430 Tesson Ferry Road, St. Louis, Missouri, brochures, magazines, coupons and flyers, all in violation of Title 18, United States Code, §§ 1341 and 2.

## COUNTS 3 to 12
(Use of a Communications Facility to Transmit Bets and Betting Information)

38. The Grand Jury re-alleges paragraphs 18, 26 and 31 above, and further charges that, on or about the dates listed below, in the Eastern District of Missouri and elsewhere, defendants GARY KAPLAN and NORMAN STEINBERG, and others known and unknown, being engaged in the business of betting and wagering, did knowingly use and cause the use of a wire communication facility, for the transmission in interstate and foreign commerce, between the State of Missouri and the country of Costa Rica, wagers on sporting events and contests, information assisting in the placing of bets and wagers on sporting events and contests, and a wire communication which entitled the recipient to receive money and credit as a result of bets and wagers, and information assisting in the placing of bets and wagers, in violation of Title 18, United States Code, §§ 1084 and 2.

| Count | Date | Recipient | Defendant(s) | Communication |
|---|---|---|---|---|
| 3 | Jan 31, 2002 | Millennium Sportsbook | GARY KAPLAN & NORMAN STEINBERG | Call to 800-824-1637 transmitted instructions on opening a wagering account and instructions to send money to "Rod Jones" in Ecuador. |
| 4 | Feb. 6, 2002 | Gibraltar Sportsbook | GARY KAPLAN & NORMAN STEINBERG | Call to 800-582-1381 transmitted instructions on opening a wagering account and instructions to send money to "Thomas Navas" in Ecuador. |
| 5 | Feb. 12, 2002 | NASA | GARY KAPLAN | Call to 888-999-9238 transmitted instructions on opening a wagering account and instructions to send money to "David Allen" in Belize. |
| 6 | Mar. 8, 2002 | Gibraltar Sports | GARY KAPLAN & NORMAN STEINBERG | Call to 800-582-1381 confirmed instructions to send money to "Jerry Moore" in Ecuador. |
| 7 | Mar. 8, 2002 | Millennium | GARY KAPLAN & NORMAN STEINBERG | Call to 800-824-1637 transmitted instructions to send money to "Kevin Green" in Ecuador. |
| 8 | Mar. 12, 2002 | Millennium Sportsbook | GARY KAPLAN & NORMAN STEINBERG | Call to 800-593-2915 transmitted instructions to send money to "Paul Rogers" in Ecuador. |
| 9 | Mar. 13, 2002 | Millennium Sports | GARY KAPLAN & NORMAN STEINBERG | Internet communication to bet.wagermillennium.com confirmed account balance. |
| 10 | April 25, 2002 | Gibraltar Sports | GARY KAPLAN & NORMAN STEINBERG | Internet communication to bettherock.com transmitted a bet. |
| 11 | April 25, 2002 | Millennium Sports | GARY KAPLAN & NORMAN STEINBERG | Internet communication to millsports.com transmitted a bet. |
| 12 | June 12, 2002 | Millennium Sports | GARY KAPLAN & NORMAN STEINBERG | Call to 800-824-1637 requested withdrawal of money from wagering account. |

19

## COUNT 13
(Interstate Transportation of Gambling Paraphernalia)

39. The Grand Jury re-alleges paragraph 33 above, and further charges that on or about October 20, 2002, in the Eastern District of Missouri and elsewhere, defendants GARY KAPLAN, WILLIAM HERNAN LENIS, MONICA LENIS, MOBILE PROMOTIONS, INC. and others known and unknown, knowingly did carry and send in interstate commerce, from the State of Florida to the State of Missouri, laptop computers and software, used, and to be used and adapted, devised and designed for use in bookmaking, all in violation of Title 18, United States Code, §§ 1953 and 2

## COUNT 14
(Tax Evasion)

40. The Grand Jury further charges that, in the Eastern District of Missouri and elsewhere:

During the time period from on or about January 29, 2001 to on or about February 3, 2002, BETonSPORTS.COM, BetonSports (Antigua), Millennium, Jaguar, Infinity, and Gibraltar, entities doing business in the United States, had and received taxable wagers in the sum of approximately $1,094,669,000.00; and defendant GARY KAPLAN, who owned and controlled BETonSPORTS.COM, BetonSports (Antigua), Millennium, Jaguar, Infinity, and Gibraltar, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the said wagering excise tax due and owing by GARY KAPLAN, as the owner and operator of BETonSPORTS.COM, BetonSports (Antigua), Millennium, Jaguar, Infinity, and Gibraltar, to the United States of America for said time period, by failing to make any wagering excise tax returns on or before the last day of the month following the month the wagers were accepted, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal

Revenue Service said wagering excise tax, and by directing that the wagering funds be sent outside the United States, all in violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

### COUNT 15
(Tax Evasion)

41. The Grand Jury further charges that, in the Eastern District of Missouri, and elsewhere:

During the time period from on or about February 4, 2002 to on or about February 2, 2003, BETonSPORTS.COM, BetonSports (Antigua), Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, entities doing business in the United States, had and received taxable wagers in the sum of approximately $1,228,874,000.00; and defendant GARY KAPLAN, who owned and controlled BETonSPORTS.COM, BetonSports (Antigua), Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the said wagering excise tax due and owing by GARY KAPLAN as the owner and operator of BETonSPORTS.COM, BetonSports (Antigua), Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall to the United States of America for said time period, by failing to make a wagering excise tax return on or before the last day of the month following the month wagers were accepted, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said wagering excise tax, and by causing and directing that the wagering funds be sent outside the United States, all in violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

## COUNT 16
(Tax Evasion)

42. The Grand Jury further charges that, in the Eastern District of Missouri, and elsewhere:

During the time period from on or about February 3, 2003 to on or about February 1, 2004, BETonSPORTS.COM, BetonSports (Antigua), Bettorstrust, Rockisland, Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, entities doing business in the United States, had and received taxable wagers in the sum of approximately $1,235,374,000.00; and defendant GARY KAPLAN, who owned and controlled BETonSPORTS.COM, BetonSports (Antigua), Bettorstrust, Rockisland, Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the said wagering excise tax due and owing by GARY KAPLAN as the owner and operator of BETonSPORTS.COM, BetonSports (Antigua), Bettorstrust, Rockisland, Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall to the United States of America for said time period, by failing to make wagering excise tax returns on or before the last day of the month following the month the wagers were accepted, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said wagering excise tax, and by causing and directing that the wagering funds be sent outside the United States, all in violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

## COUNTS 17 to 22
(Interference With Administration of Revenue Laws)

43. On or about the dates listed below, in the Eastern District of Missouri and elsewhere, defendants GARY KAPLAN, NORMAN STEINBERG and others known and unknown, did corruptly obstruct and impede and endeavor to obstruct and impede the due administration of the

internal revenue laws by directing that money for opening and funding sports wagering accounts, sent from the United States to unlawful Internet and telephone service gambling businesses located outside the United States, be directed to a third party recipient, all in violation of Title 26, United States Code, Section 7212(b), and Title 18, United States Code, Section 2, as follows:

**COUNT 17** - January 31, 2002, Millennium Sportsbook employees gave instructions to an individual in the United States to send money to "Rod Jones" in Ecuador.

**COUNT 18** - February 6, 2002, Gibraltar Sportsbook employees gave instructions to an individual in the United States to send money to open a wagering account to "Thomas Navas" in Ecuador.

**COUNT 19** - February 12, 2002, NASA Sportsbook employees gave instructions to an individual in the United States to send money to open a wagering account to "David Allen" in Belize City.

**COUNT 20** - March 8, 2002, Gibraltar Sportsbook employees gave instructions to an individual in the United States to send money to open an wagering account to "Jerry Moore" in Ecuador.

**COUNT 21** - March 8, 2002, Millennium Sportsbook employees gave instructions to an individual in the Untied States to send money to "Kevin Green" in Quito, Ecuador.

**COUNT 22** - March 12, 2002, Millennium Sportsbook employees gave instructions to an individual to send money to "Paul Rogers" in Ecuador.

## RICO FORFEITURE

44. The allegations contained in Count 1 of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging

forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count 1 of this Indictment.

45. The defendants,

> GARY STEPHEN KAPLAN, also known as "Greg Champion;"
> NEIL SCOTT KAPLAN, also known as "Scott Kaye;"
> LORI BETH KAPLAN MULTZ; also known as "Beth;"
> DAVID CARRUTHERS;
> PETER WILSON;
> NORMAN STEINBERG, also known as "Tom Miller and "Dave Brown;"
> TIM BROWN, also known as "Matt Brown;"
> WILLIAM HERNAN LENIS, also known as "Bill Lenis";
> WILLIAM LUIS LENIS, also known as "Will Lenis";
> MANNY GUSTAVO LENIS;
> MONICA LENIS;
> BETONSPORTS PLC, its predecessors, holding companies, and associated entities;
> DIRECT MAIL EXPERTISE, a Florida corporation, its predecessors and successors;
> DME GLOBAL MARKETING & FULFILLMENT, INC., a Florida corporation, its predecessors and successors; and
> MOBILE PROMOTIONS, INC., a Florida corporation, its predecessors and successors;

i. have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii. have an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the ENTERPRISE named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code,

Section 1963(a)(2);

   iii. have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3),

46. The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

 a. at least $4.5 billion dollars;
  Recreational vehicle with VIN number 5B4MP67G023338413;
  Recreational vehicle with Florida license tag number S53-8XW;
  Recreational vehicle with Florida license tag number S79-7KJ;
  PT Cruiser with VIN number 3C8FY4BB41T586360;
  PT Cruiser registered to Mobile Promotions or William Lenis;
  PT Cruiser with Florida license tag number V65-TAG;
  Humvee with serial number 5GRGN23US4H116407;
  Humvee with serial number 5GRGN23US74H120068;
  Vehicle trailer VIN number 4DFTS10122N050735
  Dell Latitude laptop computer, serial number 25633081;
  Gateway laptop computer, serial number 0027465903;
  Gateway laptop computer serial number 0015533205;
  Gateway laptop computer serial number 002804106; and
  Sprint cell phone assigned number 305-527-6674, forfeitable pursuant to Title 18, United States Code, Sections 1963(a)(1) and 1963(a)(3);

 b. all right, title and interest in BETONSPORTS PLC and its subsidiaries and affiliates identified in paragraph 17 of this Indictment, forfeitable as each convicted defendant's interest in the ENTERPRISE pursuant to Title 18, United States Code, Section 1963(a)(2)(A);

 c. all right, title and interest in those entities identified in paragraph 19 of this Indictment, forfeitable as each convicted defendant's interest in the ENTERPRISE pursuant to Title 18, United States Code, Section 1963(a)(2)(D);

25

47. If any of the property described in paragraphs (ii) and (iii) above, as a result of any act or omission of a defendant --

   (1) cannot be located upon the exercise of due diligence;

   (2) has been transferred or sold to, or deposited with, a third party;

   (3) has been placed beyond the jurisdiction of the court;

   (4) has been substantially diminished in value; or

   (5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs 45 and 46 above.

48. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

   All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL

*Carol Bade*
FOREPERSON

CATHERINE L. HANAWAY
UNITED STATES ATTORNEY

MICHAEL K. FAGAN #6617
Assistant United States Attorney

MARTY WOELFLE AZ Bar #009363
Trial Attorney
Organized Crime and Racketeering Section

26