UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION



FILED
JUL 17 2006
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4 06CV01064CEJ |
| v. | ) | |
| | ) | **FILED UNDER SEAL** |
| BETONSPORTS PLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
***EX PARTE* MOTION FOR TEMPORARY RESTRAINING**
**ORDER, PRELIMINARY INJUNCTION, AND**
**OTHER EQUITABLE RELIEF**

**I. INTRODUCTION**

Plaintiff United States of America moves the Court for an *ex parte* temporary restraining order and, upon hearing, a preliminary injunction to enjoin the defendant from further perpetuating its mail and wire fraud scheme, and to require the defendant to return funds to persons residing in the United States it illegally obtained pursuant to that scheme. The relief requested is authorized by the Fraud Injunction Statute, 18 U.S.C. § 1345, and the Court's inherent power to grant equitable relief.

**II. STATEMENT OF THE FACTS**

The details of the fraudulent scheme created and perpetuated by the defendant and its predecessors is detailed in the Affidavit of Detective Brian Mize, which was filed with the Complaint. A copy of the Affidavit [with Exhibits A, B and C] is attached for the Court's convenience. The crux of the allegations in the United States' Complaint against the defendant is that it has committed and is continuing to commit mail and wire fraud by soliciting and accepting

wagers on sports and sporting events, and using interstate and international wire communications facilities, specifically, telephone wires, to transmit wagering information in violation of federal law. In order to persuade individuals to place these wagers, the defendant fraudulently and falsely claims that its operation is "legal and licensed" in the United States. The magnitude of the fraud perpetrated by the defendant is enormous; between 2001 and 2004, the defendant took in more than $3.5 *billion* dollars in wagers, almost all of it from persons in the United States. The defendant's scheme is ongoing, and is likely to continue, absent injunctive relief from the Court.

### III. ARGUMENT

A.  **THE EQUITABLE RELIEF REQUESTED BY THE UNITED STATES IN THIS CASE IS AUTHORIZED BY THE FRAUD INJUNCTION STATUTE**

Broad authority for the equitable relief sought by the United States exists in 18 U.S.C. § 1345, which states, in pertinent part:

> (a)(1) If a person is –
> (A) violating, or about to violate this chapter . . .
> The Attorney General may commence a civil action in any Federal court to enjoin such violation.
> \* \* \*
> (3) A permanent or temporary injunction or restraining order shall be granted without bond.

Congress originally enacted § 1345 to prevent ongoing fraudulent conduct during the pendency of a criminal prosecution, which may take months or years to complete. Testimony presented to Congress convinced the legislators that persons under investigation or prosecution for fraud continued to victimize others, and that some mechanism was required to stop fraudulent conduct short of criminal conviction. *See* S.Rep.No. 225, 98th Cong., 2d Sess. 401-02, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3539-40. The order enjoining the fraud under § 1345

remains a central component of the statute, which has been extensively amended over the years to authorize additional relief.

B.   **THE UNITED STATES HAS ESTABLISHED THAT EQUITABLE RELIEF SHOULD BE GRANTED IN THIS CASE**

The traditional test[1] to determine whether equitable relief should be granted is subsumed by § 1345, which explicitly provides for such remedy. In a case involving another statute providing for equitable relief, the Railroad Revitalization and Regulatory Reform Act, the Eighth Circuit Court of Appeals declined to apply traditional equitable strictures to the available relief. Rather, the Court stated:

> It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction. In such situations, it is not the role of the courts to balance the equities between the parties. The controlling issue is whether Congress has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the statute prohibits. The proper role of the courts is simply to determine whether a violation of the statute has or is about to occur.

*Burlington Northern Ry. Co. v. Blair*, 957 F.2d 599, 601-02 (8th Cir. 1992).

Section 1345 explicitly provides for injunctive relief to prevent a violation of the mail and wire fraud statutes. In order to obtain relief under § 1345, the government must establish that the defendant is violating or about to violate the mail and/or wire fraud statutes. This requires the United States to demonstrate that: (1) the defendant voluntarily and intentionally devised or

---

[1] (1) A substantial threat that the plaintiff will suffer irreparable harm if the relief is not granted; (2) the irreparable harm to the plaintiff outweighs any potential harm that granting a preliminary injunction may cause the defendant; (3) a substantial probability that the plaintiff will prevail on the merits; and (4) the public interest will be served. *Dataphase Systems Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

3

participated in a scheme to obtain money, property or property rights by means of material false representations or promises; (2) the defendant did so with the intent to defraud; (3) it was reasonably foreseeable that the mail/interstate wires would be used; and (4) the mail/interstate wires were used in furtherance of some essential step in the scheme.[2]

For the purposes of obtaining relief pursuant to § 1345, the United States need only show the ongoing fraud scheme exists by a preponderance of the evidence. *United States v. Barnes*, 912 F.Supp. 1187, 1194-95 (N.D.Iowa 1996). The existence and ongoing nature of the fraudulent scheme in this case is established by the facts presented in the verified Complaint and attached Affidavit. Those facts demonstrate that the defendant is engaged in obtaining money from persons in the United States, through the operation of illegal gambling businesses, which are falsely presented to those persons as a "legal and licensed" activity.

The defendant's intent to defraud is demonstrated by the defendant's representation that its activities are "legal and licensed" in the United State, though its own internal and public documents demonstrate that it sought legal advice on the subject, and was informed of the prohibitions against Internet gambling contained in federal law. Additionally, the defendant misrepresents its gambling web sites as individually owned and operated, in order to keep collecting illegal wagers and fees from persons in the United States who, having decided not to gamble with an Internet web site or telephone service operated by the defendant, is fooled into believing that he or she has changed "bookies," when in fact the wagerer is dealing with the same entity and the same operators.

---

[2] *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* (2003).

In the defendant's operations in the United States, not only was it foreseeable that the U.S. mail system and interstate/international wire communications network would be used to execute the scheme, it was (and is) an integral part of the scheme itself. The defendant advertises funding mechanisms, such as Neteller and Electronic Money Transfer that utilize wire communications in interstate and foreign commerce. The defendant also advertises delivery of payout checks via courier service. This evidence more than satisfies the plaintiff's burden of proof.

C. **A TEMPORARY RESTRAINING ORDER IS NECESSARY TO PRESERVE THE STATUS QUO**

The authority granted to district courts by 18 U.S.C. §1345 includes the power to issue a Temporary Restraining Order ("TRO"). Section (b) of the statute provides that "[t]he court . . . may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." In this case, the United States suffers a number of substantial injuries from the defendant's conduct. First, there is the injury inherent in the violation of U.S. federal law by a foreign company that has deliberately designed its operations to avoid U.S. authority. Second, there is the subversion of the monetary wire transfer systems in the United States, which the defendant uses to make and to cause illegal transactions. Third, BETONSPORTS PLC acts as an unregulated bank, and is a perfect conduit for money laundering, diminishing the ability of the United States to prevent such transactions. And fourth, the United States suffers a loss of tax revenue that would accrue, if the

wagers placed with the defendant were legally placed.[3]

Beyond the necessity of showing a "continuing and substantial injury," the Fraud Injunction Statute does not provide any criteria for issuance of a TRO. Therefore, courts have generally looked to Federal Rule of Civil Procedure 65(b)[4] for guidance. In the Eighth Circuit, the authoritative interpretation of Rule 65(b) is in the case of *Dataphase Systems, Inc. V. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The factors to be weighed in the issuance of a TRO include: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant absent the injunction;[5] (3) the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties; and (4) the public interest. *See also, Ertergy, Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000).

The defendant is a foreign national, operating in the United States, but without a physical presence in the United States. BETONSPORTS PLC, while acknowledging that Internet gambling is illegal in the United States, claims that it doesn't take bets in the United States, but

---

[3] Pursuant to 26 U.S.C. § 4401(a)(2), the defendant was required to pay a 10% tax on every wager it accepted, including the amount of the money charged to place the bet.

[4] **(b) Temporary Restraining Order; Notice; Hearing; Duration.** A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. . . .

[5] Under 18 U.S.C. §1345(b), the United States need show only "a continuing and substantial injury" rather than irreparable harm.

only at its headquarters in Costa Rica, where its operations are physically located.[6] This is, of course, patently untrue. The wagers made by residents of the United States are placed using computers and telephones physically located in the United States, and the money used to fund the wagers is transferred to the defendant from individuals and financial institutions in the United States.[7]

The fact that BETONSPORTS PLC doesn't have a physical presence in the United States makes it extremely difficult for the government to attack its illegal gambling businesses using traditional methods. If the United States were to address the defendant's conduct through a criminal prosecution, won a conviction, and then sought to forfeit the instrumentalities of the fraudulent scheme, *i.e.,* the BETONSPORTS PLC Internet gambling web sites, the defendant could simply re-route its Internet access, or establish new web sites. The illegal gambling businesses would continue, almost without interruption. It takes only minutes to change the IP addresses associated with a particular domain name, and only minutes to set up a new Internet web site. Unless the defendant is prevented from doing these things, the illegal gambling

---

[6] At the National Conference of Legislators from Gambling States Summer meeting on _____, David Carruthers, the CEO of BETonSPORTS.COM and a Director of BETONSPORTS PLC stated: "Is it illegal to wager on the Internet in the United States? Yes, it is." Later, Carruthers said: "BetonSports does not take any bets in the United States. We take all our wagers on the Internet outside of the United States."

[7] *See United States v. Cohen,* 260 F.3d 68, 74 -75 (2nd Cir. 2001). The defendant in that case, who operated an Internet sports book similar to BETonSPORTS.COM, claimed that the bets he took were not made in the U.S., but at his offices in Antigua. The defendant objected to the following jury instruction: "If there was a telephone call or an internet transmission between New York and [the defendant] in Antigua, and if a person in New York said or signaled that he or she wanted to place a specified bet, and if a person on an internet device or a telephone said or signaled that the bet was accepted, this was the transmission of a bet within the meaning of Section [18 U.S.C.] 1084." The Court ruled that the instruction was proper.

businesses could continue uninterrupted through any criminal prosecution and conviction.

Even a preliminary injunction, without the requested TRO, would give the defendant more than ample time to make the arrangements necessary to allow its illegal businesses to continue, no matter what injunctive relief the Court might subsequently grant. In order to be effective, the injunctive relief must start with preservation of the *status quo*.

Regarding the third factor, the balancing of harm caused by the fraudulent conduct, and the potential harm caused by the requested injunction relief, there is very little weight on the defendant's side. The only possible harm is to BETONSPORTS PLC stockholders, who may lose their investment. However, given that these largely institutional investors were given notice that the defendant made virtually all of its revenue by violating U.S. federal law, this should not be a significant consideration. As for BETONSPORTS PLC itself, the TRO and preliminary injunction will simply require it to abide by federal law, stop its fraudulent conduct, and make restitution. These requirements cannot be categorized as "injuries."

Finally, the public interest would surely be vindicated by the prevention of fraud. The public interest will be served by allowing the several states to regulate gambling within their borders as they see fit. As recognized by the Supreme Court, each state has the right to determine what gambling activities it will allow, if any. *United States v. Edge*, 509 U.S. 418, 422-23, 113 St.Ct. 2696, 2700-01, 125 L.Ed.2d 345 (1993). The fraudulent activities of the defendant currently trump any regulation of gambling, state or federal. Therefore, the public interest would be best served by preventing the defendant from operating in the United States, as quickly as possible.

### D. THE RELIEF REQUESTED IS WITHIN THE INHERENT EQUITABLE POWER OF THE COURT

The Eighth Circuit has long recognized the inherent powers of a court of equity. In *Panhandle Eastern Pipe Co. v. Fed. Power Comm.*, 154 F.2d 909 (8th Cir. 1946), the court of appeals refused to modify a stay order, and stated:

> A court of equity 'in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposed to act. The power to impose such conditions is founded upon, and arises from the discretion which the court has in such cases, to grant, or not to grant, the injunction applied for. It is a power inherent in the court, as a court of equity, and has been exercised from time immemorial.'

154 F.2d at 911 (quoting *Inland Steel Co. v. United States*, 306 U.S. 153, 156 (1939)); *see also Amalgamated Ass'n. of Street, Electrical Ry. & Motor Coach Employees of America v. Dixie Motor Coach Corp.*, 170 F.2d 902, 904 (8th Cir. 1948) (recognizing the inherent powers of a court of equity to issue injunctions).

More recently, in *Fed. Trade Comm. v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991), the Eighth Circuit held that a district court had the power to issue an injunction granting the monetary equivalent of recision for customers who had been deceived by fraud, even though such relief was not explicitly spelled out in the applicable statute. The court stated:

> Nothing in the wording of the statute expressly precludes ancillary equitable relief. Where Congress allows resort to equity for the enforcement of a statute, all the inherent equitable powers of the district court are available for the proper and complete exercise of the court's equitable jurisdiction, unless the statute explicitly, or 'by a necessary and inescapable inference,' limits the scope of that jurisdiction.

931 F.2d at 1314 (citations omitted).

In the Fraud Injunction Statute, Congress resorted to equity for the enforcement of Section 1345 by referencing a district court's authority "to take other action as is warranted to prevent a continuing and substantial injury." 18 U.S.C. § 1345(b). Thus, a district court acting pursuant to this subsection possesses all its inherent equitable powers to fashion a preliminary injunction and "take other action."

### IV.  CONCLUSION

Plaintiff United States respectfully requests that the Court issue the equitable relief sought, in order to prevent continuing fraudulent conduct by the defendant, BETONSPORTS PLC. As described in the Complaint, the Affidavit of Detective Brian Mize, and this Memorandum, the United States has provided specific evidence showing that BETONSPORTS PLC is conducting illegal gambling businesses in the United States, and committing fraud to induce residents of the United States to gamble. The defendant's conduct is doing harm to the residents of the United States, and it should be enjoined.

Respectfully submitted,

CATHERINE L. HANAWAY
United States Attorney

MICHAEL K. FAGAN, #6617
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2220

MARTY WOELFLE
Trial Attorney
U.S. Department of Justice
Organized Crime & Racketeering Section
1301 New York Ave., Room 705
Washington, D.C. 20005
(202) 353-2373